UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

| UNITED STATES OF AMERICA, | APPEAL NO. 22-1080 |
|---|---|
| Appellee, | |
| v. | APPELLANT'S PETITION FOR REHEARING BY THE PANEL OR REHEARING EN BANC |
| SYLVESTER CUNNINGHAM, | |
| Appellant. | |

**TABLE OF CONTENTS**

RULE 35(b)(1) STATEMENT ................................................................. 2

FACTUAL AND PROCEDURAL HISTORY ................................................. 5

ARGUMENT ........................................................................................ 7

    I.    As confirmed by *Rahimi*, *Bruen* dictates a different mode of Second Amendment analysis from the dicta-based mode of analysis of this Court. ........................................................................................ 7

    II.   *Rahimi's* historical analysis of § 922(g)(8) and the limitations on its reach establishes that this Court's historical defense of the much broader felon-in-possession ban is faulty. Further, this Court still has refused to conduct the comparable-burden analysis required by *Bruen* and *Rahimi*. ................................................................ 12

    III.  Cunningham's case is an appropriate vehicle to address this issue. ............................................................................................... 17

CONCLUSION & REQUEST FOR REHEARING EN BANC ........................ 19

CERTIFICATE OF SERVICE ................................................................ 20

Sylvester Cunningham, ("Cunningham") through counsel, respectfully petitions pursuant to Federal Rule of Appellate Procedure 35(c) for rehearing by the panel or rehearing *en banc*. In support of his request, Cunningham states the following:

## RULE 35(b)(1) STATEMENT

In *District of Columbia v. Heller*, 554 U.S. 570 (2008), the Supreme Court recognized that based on the text of the Second Amendment and history, the amendment "conferred an individual right" "to possess and carry weapons in case of confrontation." *Id.* at 576, 582, 592-95. But it was only in *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1 (2022), that the Supreme Court set forth a "test" for deciding the constitutionality of all firearm regulations going forward.

At "Step One" of *Bruen*'s Second Amendment test, courts may consider *only* whether "the Second Amendment's plain text covers an individual's conduct." 597 U.S. at 17. If so, *Bruen* held, "the Constitution presumptively protects that conduct." *Id.* Regulating presumptively protected conduct is unconstitutional unless the government, at "Step Two" of the analysis, can "justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation"—that is, the tradition in existence "when the Bill of Rights was adopted in 1791." *Id.* at 37.

Post-*Bruen* but prior to *United States v. Rahimi*, 144 S. Ct. 1889 (June 21, 2024), in *United States v. Jackson*, 69 F.4th 495 (8th Cir. 2023) (hereinafter "*Jackson I*"), this Court declined to engage in the full analysis. Instead, the Court relied upon dicta in *Heller* about "presumptively lawful" "longstanding prohibitions" against felons possessing firearms as justification to preemptively reject all Second Amendment challenges to 18 U.S.C. § 922(g)(1). *Jackson I* also relied upon dicta from *Heller* to find only "law abiding citizens" were protected by the Second Amendment.

After *Jackson I*, in *Rahimi*, the Supreme Court provided clearer instruction on the post-*Bruen* required methodology—instruction that directly undercuts the assumptions and reasoning driving *Jackson I's* mode of analysis. *Rahimi* made clear that (1) *Bruen* indeed set forth a new methodology for Second Amendment analysis that lower courts must follow, and (2) *Rahimi* "clarified" that methodology. *See* 144 S. Ct. at 1898 (Roberts, C.J., writing for the majority) ("As we explained in *Bruen*, the *appropriate analysis* involves considering whether the challenged regulation is consistent with the principles that underpin our regulatory tradition. A court *must ascertain* whether the new law is 'relevantly similar' to laws that our tradition is understood to permit, 'apply[ing] faithfully *the balance stuck by the founding generation* to modern circumstances.'") (internal citations to

*Bruen* omitted; emphasis added). After *Rahimi*, the Supreme Court granted pending petitions for writ of certiorari in three cases from this Circuit, including *Jackson I*, vacated the decisions, and remanded to this Court for reconsideration in light of *Rahimi*.

Despite this remand, the *Jackson* panel quickly reissued a decision, again rejecting any and all Second Amendment challenges to 18 U.S.C. § 922(g)(1). *United States v. Jackson*, -- F.4th--, 2024 WL 3711155 (8th Cir. Aug. 8, 2024) (hereinafter "*Jackson II*"). *Jackson II still* relied upon dicta from *Heller* regarding "presumptively lawful" regulations. And again, the panel relied upon vague comparisons to statutes that prohibited non law abiding or dangerous individuals from possessing firearms.

A closer look at *Rahimi* establishes that *Jackson II* is inconsistent with the Supreme Court's Second Amendment analysis. First, *Rahimi* rejected that the Supreme Court's references to "law-abiding" individuals in *Heller* and *Bruen* was binding or otherwise precedential. Second, *Rahimi's* historical analysis of § 922(g)(8)(C)(i) demonstrates the clear inadequacy of the *Jackson II's* purported "analogues" comparison for § 922(g)(1). Rehearing is necessary to address this question and ensure this Circuit actually requires and applies the methodology laid out in *Bruen* and *Rahimi*.

# FACTUAL AND PROCEDURAL HISTORY

Cunningham was charged by superseding indictment with one count of being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), one count of possession with intent to distribute cocaine base and cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), and possession of a firearm during and in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1). R. Doc 29.[1] Cunningham filed a motion to dismiss the felon in possession of a firearm count of the indictment. R. Doc 16. The indictment asserted Cunningham was convicted of the following crimes punishable by imprisonment for a term exceeding one year:

1. Driving under the influence of alcohol, in the Circuit Court for the Fourteenth Judicial Circuit, Henry County, Illinois, on or about April 21, 2005, in case number 04CF160; and

2. Being a prohibited person (felon) in possession of a firearm, in the United States District Court for the Northern District of Iowa, on or about August 16, 2012, in case number 12-CR-00002.

R. Doc. 29.

---

[1] In this petition, the following abbreviations will be used:
"R. Doc." -- district court clerk's record, followed by docket entry and page number, where noted.

Cunningham raised an as-applied challenge to the 18 U.S.C. § 922(g)(1) charge, arguing the prosecution violated his Second Amendment rights. R. Doc. 16. The prosecution resisted, although it acknowledged that (at the time) the Eighth Circuit had left open the possibility of an as-applied challenge to § 922(g)(1). R. Doc. 22. The district court ultimately denied the motion to dismiss. R. Doc. 37, 46.

Cunningham appealed. As relevant to this petition, he argued that the felon in possession charge violated his Second Amendment rights, as applied to his own conduct. During the briefing process, the Supreme Court decided *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022).

In a 2-1 decision, the panel rejected Cunningham's as-applied challenge, finding his argument was "foreclosed by *United States v. Jackson*, 69 F.4th 495, 501–02 (8th Cir. 2023), where we concluded that there is no need for felony-by-felony determinations regarding the constitutionality of § 922(g)(1) as applied to a particular defendant." *United States v. Cunningham*, 70 F.4th 502, 506 (8th Cir. 2023).

Cunningham filed a petition for writ of certiorari. As discussed above, while the petition was pending, the Supreme Court decided *United States v. Rahimi*, 144 S. Ct. 1889 (2024). The Supreme Court granted, vacated, and remanded Cunningham's case for reconsideration after *Rahimi*. This Court

6

reissued a decision in *Jackson II*, again preemptively rejecting all Second Amendment challenges to 18 U.S.C. § 922(g)(1), facial or as applied. *United States v. Jackson*, -- F.4th--, 2024 WL 3711155 (8th Cir. Aug. 8, 2024).

Soon thereafter, the panel in Cunningham's case reissued its decision, finding his challenge was foreclosed by *Jackson II*. *United States v. Cunningham*, --F.4th--, 2024 WL 3840143 (8th Cir. 2024). Judge Stras dissented. *Id*. at *4 (Stras, J., dissenting).

## ARGUMENT

I. **As confirmed by *Rahimi*, *Bruen* dictates a different mode of Second Amendment analysis from the dicta-based mode of analysis of this Court.**

*Jackson II* declines to engage in the proper Step One analysis of *Bruen*, instead relying on vague Supreme Court dicta to find that any and all felons are not part of "the people." *Rahimi* illustrates that *Jackson II's* approach to Step One does not comply with Supreme Court precedent, for several reasons.

*First*, *Rahimi* confirmed that *Bruen* indeed set forth a new methodology for Second Amendment analysis and clarified that methodology. Every member of the Court agreed on those points. *See* 144 S. Ct. at 1898 (Roberts, C.J., writing for the majority) ("As we explained in *Bruen*, the *appropriate analysis* involves considering whether the

7

challenged regulation is consistent with the principles that underpin our regulatory tradition. A court *must ascertain* whether the new law is 'relevantly similar' to laws that our tradition is understood to permit, 'apply[ing] faithfully the balance struck by the founding generation to modern circumstances.'") (internal citations to *Bruen* omitted; emphasis added).[2] Therefore, finding that pre-*Bruen* dicta controls, and this new "methodology" is somehow not required, is incorrect.

---

[2]*See also id.* at 1904-05 (Sotomayor, J. joined by Kagan, J., concurring) ("The Court's opinion *clarifies an important methodological point*"—namely, that "*courts applying Bruen should 'conside[r]* whether the challenged regulation is consistent with the *principles* that underpin our regulatory tradition;'" "*The Court today clarifies Bruen's historical inquiry*") (internal citations to *Bruen* omitted; emphasis added); *id.* at 1907, 1910 (Gorsuch, J., concurring) (under *Bru*en, "'[T]ext *and history' dictate* the contours of [the Second Amendment] right;" the government *must establish* that, "in at least some of its applications, the challenged law 'impose[s] a comparable burden on the right of armed self-defense' to that imposed by a historically recognized regulation," and "the burden imposed by the current law 'is comparably justified;'" "The Court *reinforces the focus on text, history, and tradition, following exactly the path we described in Bruen*") (internal citations to *Bruen* omitted; emphasis added); *id.* at 1923 (Kavanaugh, J., concurring) (in today's opinion the Court "builds on" *Bruen*'s "relevantly similar" standard); *id.* at 1924-25 (Barrett, J., concurring) ("courts *must examine our tradition of firearm regulation*," and "[a] regulation is constitutional only if the government *affirmatively proves* that it is 'consistent with the Second Amendment's text and historical understanding'") (internal citations omitted); *id.* at 1926 (Jackson, J., concurring) (the Court adopted a "*new legal standard in Bruen*," and "*Bruen is now binding law;*" "*The tests we established bind lower court judges;*" "The Court today *expounds on the*

*Second*, and relatedly, *Rahimi* squarely "reject[ed] the Government's contention" that legislatures can disarm anyone who is not "responsible." 144 S. Ct. at 1903. And notably, *Jackson II* continues to apply that now-definitively-rejected contention.

*Rahimi* declared the term "responsible," advanced by the government as its hoped-for Second Amendment standard, to not only be "vague," but that any purported dividing line predicated on "responsible" does *not* "derive from our case law." 144 S. Ct. at 1903. Indeed, the Court explained, *Heller* and *Bruen* used the term "responsible" simply to "describe the class of ordinary citizens who undoubtedly enjoy the Second Amendment right." Those opinions "said nothing about the status of citizens who were not 'responsible,'" because "[t]he question was simply not presented." *Id.*

Importantly, the government derived its proffered "responsible" limitation in *Rahimi* from the same place it derived its supposed rule for § 922(g)(1) advanced in *Jackson II* that "non-law-abiding" people can be disarmed: passages in *Heller* and *Bruen* that use those words. Notably, in its

---

*history-and-tradition inquiry that Bruen requires*," "*to clear up 'misunderst[andings]*'") (internal citations omitted; emphasis added); *id.* at 1931 (Thomas, J., dissenting) (*Bruen* "laid out the *appropriate framework* for assessing whether a firearm regulation is constitutional," and "*as the Court [today] recognizes*," whether that modern regulation "violates the Second Amendment mandate") (emphasis added).

briefing, the government had specifically argued that, as interpreted in *Heller* and *Bruen*, "The Second Amendment Allows Congress to Disarm Persons Who Are Not *Law-Abiding,* Responsible Citizens." Government's Brief, *United States v. Rahimi*, 2023 WL 5322645, at **10-13 (U.S. Aug. 14, 2023) (emphasis added). Accordingly, if "responsible" is out as a limiting Second Amendment principle for the reasons explained by the *Rahimi* majority, "law-abiding" is necessarily out as well.

Justice Thomas made that clear in a portion of his dissent—not disputed by the majority—stating:

> The Government, for its part, tries to rewrite the Second Amendment to salvage its case. *It argues that the Second Amendment allows Congress to disarm anyone who is not 'responsible' and 'law-abiding.' Not a single Member of the Court adopts the Government's theory.* Indeed, the Court disposes of it in half a page—and for good reason. *Ante*, at ____. The Government's argument lacks any basis in our precedents and would eviscerate the Second Amendment altogether.
>
> The Government's position is a bald attempt to refashion this Court's doctrine. ... The Government's claim that the Court already held [in *Heller* and *Bruen*] the Second Amendment protects only '*law-abiding*, responsible citizens' is specious at best. ...
>
> [T]he Government's '*law-abiding*, dangerous citizen' test—and indeed any similar, principle-based approach—would hollow out the Second Amendment of any substance.

144 S. Ct. at 1945-46 (emphasis added). As thus confirmed, *Rahimi* puts the "law-abiding, responsible citizen" to rest once and for all.

*Third*, *Rahimi* illustrates that reliance on the "presumptively lawful" language as justification to avoid the *Bruen* analysis is improper. True, the *Rahimi* majority mentioned the "presumptively lawful" dicta in *Heller*. But a review of the majority's full statement is crucial to assess the significance of this single reference:

> Rahimi argues *Heller* requires us to affirm, because Section 922(g)(8) bars individuals subject to restraining orders from possessing guns in the home, and in *Heller* we invalidated an 'absolute prohibition on handguns … in the home.' 554 U.S., at 636; Brief for Respondent at 32. But *Heller* never established a categorical rule that the Constitution prohibits regulations that forbid firearm possession in the home. In fact, our opinion stated that many such prohibitions, like those on the possession of firearms by 'felons and the mentally ill,' are 'presumptively lawful.' 554 U. S., at 626, 627, n.26. Op. 15.

144 S. Ct. at 1902.

Here, the Supreme Court was simply saying Rahimi had over-read *Heller*, which on its own terms did not support his position that all gun bans in the home are unconstitutional. The Court was *not* independently endorsing the idea that all-felon-disarmament is lawful; it was simply noting *Heller* did not support Rahimi's position. Indeed, the Court thereafter confirmed that, as in *Heller* and *Bruen*, it was "not 'undertak[ing] an

11

exhaustive historical analysis ... of the full scope of the Second Amendment,'" and was "only" holding people who pose a "credible threat" to others may be disarmed. 144 S. Ct. at 1903. These statements preclude reading the majority's passing reference to footnote 26 in *Heller* as a "holding" about the constitutionality of § 922(g)(1). It was *not*. *See also Rahimi*, *id.* at 1901 (making clear the Court was declining to decide whether categorical bans like § 922(g)(1), referenced in *Heller*, were actually lawful); *id.* at 1910 (Gorsuch, J., concurring).

This Court's continued reliance on dicta and rejected principles to avoid conducting the required *Bruen* analysis requires rehearing.

II. ***Rahimi*'s historical analysis of § 922(g)(8) and the limitations on its reach establishes that this Court's historical defense of the much broader felon-in-possession ban is faulty. Further, this Court still has refused to conduct the comparable-burden analysis required by *Bruen* and *Rahimi*.**

*Rahimi* also illustrates this Court's precedent does not comply with step two of the *Bruen* analysis. Under step two, to justify a firearm law infringing on otherwise protected conduct, "the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Bruen*, 597 U.S. at 17. "A court must ascertain whether the new law is relevantly similar to laws that our tradition

is understood to permit, applying faithfully the balance struck by the founding generation to modern circumstances." *Rahimi*, 144 S. Ct. at 1898 (cleaned up). Notably, the "central considerations" in a "relevantly similar" inquiry are what *Bruen* called the "*how* and *why:*" "whether modern and historical regulations impose a *comparable burden* on the right of armed self-defense and whether that burden is *comparably justified.*" *Bruen*, 597 U.S. at 29 (emphasis added).

*Jackson II* does not point to any specific laws that it considers "relevantly similar" to the felon in possession prohibition. Instead, *Jackson II* notes that governments *generally* prohibited "those unwilling to obey the government and its laws" and people who "presented an unacceptable risk of danger" from possessing firearms, and therefore § 922(g)(1) is consistent with "historical traditions."

Yet in applying *Bruen*, *Rahimi* made clear that Second Amendment challenges mandate detailed historical analysis applied to a specific law, not sweeping generalities, as this Court has done in defense of § 922(g)(1). With respect to § 922(g)(8)(C)(i), examined in *Rahimi*, the Supreme Court ultimately concluded that surety laws and "going armed" laws sufficiently established a tradition of temporarily disarming someone found by a court to pose a credible threat to the physical safety of others (just like §

13

922(g)(8)(C)(i) does today). Notably, surety laws—like § 922(g)(8)(C)(i)—mitigated "demonstrated threats of physical violence" and were temporary. *Rahimi*, 144 S. Ct. at 1901.

By contrast, *Jackson II* did not identify a single historical firearm law that imposed anything close to § 922(g)(1)'s broad Second Amendment divestment, *i.e.*, a categorical, life-long prohibition for every American ever convicted of any offense punishable by more than one year of imprisonment. The vague references to prohibiting those unwilling to obey laws and viewed as dangerous are insufficient. As a threshold matter, the primary purpose behind such statutes was political. But even if they also promoted public safety, that can be said of any firearm regulation—including the one struck down in *Bruen*. And as discussed above, the Supreme Court squarely rejected similarly-broad, generalized "dangerousness" arguments under the guise of "responsibility" in *Rahimi*.

Moreover, as Justice Barrett rightly pointed out, interpreting historical principles "at such a high level of generality … waters down the right. … The Court settle[d] on just the right level of generality," by holding "Since the founding, our Nation's firearm laws have included provisions preventing individuals who threaten physical harm to others from misusing firearms." *Id.,* at 1926 (Barrett, J., concurring, citing the majority decision, *id*. at 1896).

And indeed, in finding surety statutes to be "comparably justified" in *Rahimi*, the Court emphasized "importantly for this case," those laws *"targeted the misuse of firearms." Id.* at 1900 (emphasis added). And that was also true for the "going-armed" laws, which "provided a mechanism for punishing those who had menaced others with firearms." *Id.* at 1900-01. In other words, both early legal regimes criminalized specific—and serious— misconduct with a gun. Section 922(g)(1), by contrast, bans a category of people from possessing firearms whether or not they have "terrif[ied] the good people of the land," *id.*, or in fact, whether they have ever used or misused a gun. Therefore, laws that did not specifically target the misuse of firearms or gun violence, are not "comparably justified" analogues for §922(g)(1).

Further, if there were any lack of clarity about this prior to *Rahimi*, the Supreme Court confirmed in *Rahimi* that *both* a comparable burden *and* a comparable justification for Founding-era regulations are required in a "relevantly similar" analysis; a comparable justification alone does *not* suffice. *See* 144 S. Ct. at 1899-1902 (finding, from among the multitude of purported "analogues" the government proffered in its brief, *see* 2023 WL 5322645, at **13-27, that only "two distinct legal regimes" "specifically addressed firearms violence"—namely, only the surety and going-armed laws

15

were "'relevantly similar' *in both why and how it burden*s the Second Amendment;" explaining "the penalty" is "another relevant aspect of the burden," and "[t]he burden that Section 922(g)(8) imposes on the right to bear arms also fits within the Nation's regulatory tradition") (emphasis added); *see id.* at 1907 (Gorsuch, J., concurring) (reiterating the important methodological point that the government must show *both* a "comparable justification" *and* a comparable burden").

Notably, *Jackson II's* analysis fails to meaningfully address the "how" question—specifically, if these analogous provisions allowed for lifetime disarmament as § 922(g)(1) does. In the "how" analysis in *Rahimi*, the Court highlighted specific features of § 922(g)(8)(C)(i) that strictly limited its scope and its ban's duration and thereby rendered it constitutional. As the Court observed, § 922(g)(8)(C)(i) restricts gun possession only if a restraining order "includes a finding that [a] person represents a credible threat to the physical safety of [an] intimate partner or child." In other words, the statute "restricts gun use to mitigate demonstrated threats of physical violence" and applies only once a court has made an individualized finding that such a threat exists. *Rahimi*, 144 S. Ct. at 1901.

By contrast, § 922(g)(1) is a categorical ban that prohibits everyone convicted of a crime punishable by more than a year in prison from

possessing a gun—without any individualized finding. And, critically, the Court also emphasized that § 922(g)(8)'s restriction is "temporary." *Id.* That is, the statute "only prohibits firearm possession so long as the defendant is subject to a restraining order." *Id.* (cleaned up). Section 922(g)(1), however, imposes a "permanent, life-long prohibition on possessing firearms." *Id.* at 1931 (Thomas, J., dissenting); *see also United States v. Duarte*, 101 F.4th 657, 685 (9th Cir. 2024) (discussing "§ 922(g)(1)'s no-exception, lifetime ban").

In short, if there were any lack of clarity about this prior to *Rahimi*, the Supreme Court confirmed in *Rahimi* that *both* a comparable burden *and* a comparable justification are required in a "relevantly similar" analysis; a comparable justification alone does *not* suffice. Yet this Court's decisions still do not comply with this appropriate framework. Rehearing is necessary to address this issue.

### III. Cunningham's case is an appropriate vehicle to address this issue.

Cunningham's case is appropriate to address this issue. His felonies, OWI and prior firearm possession, are nonviolent. Cunningham asserts the facts of the offense, or anything beyond the predicate felonies, is irrelevant in an as-applied challenge to a felon in possession of a firearm prosecution.

In constitutional challenges, courts only consider "applications of the [challenged] statute in which it actually authorizes or prohibits conduct," not circumstances for which the statute is irrelevant. *City of Los Angeles, Calif. v. Patel*, 576 U.S. 409, 415–19 (2015). That is, firearm possession (the conduct) and the prior felonies (the basis for disarmament). Any discussion of evidence outside of the basis for disarmament—here, prior felony convictions—is not considering the potential "applications" of the statute, but something completely different entirely.

The Supreme Court's decision in *Patel* is instructive. *Patel* involved a facial Fourth Amendment challenge to a municipal code provision that authorized warrantless searches of certain motel records. 576 U.S. at 412–13. The city responded that a facial challenge "must fail because such searches will never be unconstitutional in all applications." *Id*. at 417. It argued that searches covered by the statute would be constitutional in certain circumstances, such as emergency situations, where consent was given, or where the police had a warrant. *Id*. at 417–18.

The Supreme Court explained that the city misunderstood "how courts analyze facial challenges." *Id*. at 418. The purportedly constitutional applications the city identified were "irrelevant to [the Court's] analysis because they do not involve actual applications of the statute." *Id*. at 419. For

18

those examples, the searches could occur *without* the challenged statute. *Id*. "Statutes authorizing warrantless searches … do no work where the subject of a search has consented." *Id*.

The Supreme Court explained that "[l]egislation is measured for consistency with the Constitution by its impact on those whose conduct it affects. The proper focus of the constitutional inquiry is the group for whom the law is a restriction, not the group for whom the law is irrelevant." *Id*. at 418 (cleaned up). Applied here, in an as-applied challenge, the only question is whether it is valid to disarm Cunningham based upon his prior felonies. He asserts it is not.

**CONCLUSION & REQUEST FOR REHEARING EN BANC**

For the reasons stated herein, Cunningham respectfully petitions this Court for rehearing *en banc* or rehearing by the panel.

Respectfully submitted,

*/s/ Heather Quick*
Heather Quick, First Asst. Federal Defender
Appellate Chief
Federal Public Defender's Office
222 Third Avenue SE, Suite 290
Cedar Rapids, IA 52401
P: (319) 363-9540   F: (319) 363-9542

## CERTIFICATE OF COMPLIANCE

This document complies with the word limit of Fed. R. App. P. 27 because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 3,840 words. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Word version 2405 Build 16.0.17628.20006 in 14-point Georgia font.

Dated: August 20, 2024      /s/ Heather Quick
                            First Assistant Federal Defender
                            ATTORNEY FOR APPELLANT

## CERTIFICATE OF SERVICE

I hereby certify that on August 20, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. I further certify that some of the participants in the case are not CM/ECF users. I have mailed the foregoing document by First-Class Mail, postage prepaid, or have dispatched it to a third-party commercial carrier for delivery within 3 calendar days, to the following non-CM/ECF participants: <u>Sylvester Cunnnigham, Defendant/Appellant</u>.

                            /s/ Melissa Dullea, Paralegal